USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/20/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
KIETH FISHBERG,                                                  :
:
Plaintiff,                        :
:           20-cv-6664 (LJL)
-v-                                :
:           OPINION AND ORDER
STATE FARM FIRE AND CASUALTY COMPANY,                            :
:
Defendant.                        :
:
-----------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant State Farm Fire and Casualty Co. ("Defendant" or "State Farm") moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the second through fourth causes of action in the first amended complaint, at Dkt. No. 26 ("Amended Complaint"), as well as Plaintiff's demand for punitive damages and demand for attorney's fees. Dkt. No. 28.

## BACKGROUND

The following allegations, drawn from the Amended Complaint, are taken as true for purposes of this motion to dismiss.

Plaintiff Keith Fishberg ("Fishberg" or "Plaintiff") is a residential tenant in Apartment 4B of the cooperative apartment building located at 131 East 15th Street in Manhattan (the "Premises"). Dkt. No. 26 ¶ 1. He also is the insured under a Renter's Policy of Insurance issued to him under policy number 56-BBX-H373-4, which was in effect from June 11, 2019 to June 11, 2020 (the "Policy").

The Policy in pertinent part provides as follows:

> COVERAGE B- PERSONAL PROPERTY
>
> We insure accidental direct physical loss to property described in Coverage B caused by the following perils . . .
>
> 2. Windstorm or hail. This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

*Id.* ¶ 8.

> The Policy further provides:
>
> COVERAGE C – LOSS OF USE
>
> 1. Additional Living Expenses. When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living up to 24 months…

*Id.* ¶ 9.

The Policy also provides coverage for remediation of fungus and losses caused by fungus. *Id.* ¶10.

Plaintiff alleges that on or before August 2019, while the Policy was in effect, the Premises suffered substantial damages when the ceiling collapsed due to a windstorm, causing a water leak from the roof as a result of a severe rainstorm, and that Plaintiff's personal property sustained damage or was rendered useless. *Id.* ¶¶ 12-13. Plaintiff also alleges that he lost use of the Premises and was forced to expend monies to repair, remediate, and restore his personal property. *Id.* ¶¶ 15-16.

Plaintiff submitted a timely notice of claim under the Policy to State Farm and alleges that he fully complied with the notice provisions of the Policy as well as other conditions precedent to payment for what he claims was a "Covered Loss" under the Policy, but that, by letter dated August 20, 2019, State Farm denied coverage to the Plaintiff. *Id.* ¶¶ 17-19. He also

alleges that State Farm failed to investigate the alleged Covered Loss and that it refused to adjust the claim. *Id.* ¶¶ 20-21.

He asserts four causes of action. His first cause of action is for breach of contract. *Id.* ¶¶ 23-27. In his second cause of action, he alleges that State Farm refused to timely investigate and adjust the claim in good faith. *Id.* ¶¶ 28-38. Specifically, Plaintiff claims that the Defendant only telephoned the building manager where the loss occurred and relied solely on information supplied by the building manager, without sending an adjuster to the building. *Id.* ¶¶ 30-32. He claims consequential damages in the form of the costs of medical bills, loss of monies, and loss of the use of the Premises as a residence as well as incidental business activities as a result of State Farm's failure to investigate and adjust the claim in good faith. *Id.* ¶¶ 35-38.

Plaintiff's third cause of action is for materially unfair and deceptive acts and practices in violation of N.Y. General Business Law § 349. *Id.* ¶¶ 39-57 ("Section 349"). Plaintiff alleges that Defendant maintains a publicly accessible website describing the renters insurance that it makes available to the public for purchase. *Id.* ¶ 40. Plaintiff further alleges that the website represents to members of the public that they may need renters insurance if their belongings are lost in a fire or other accident and that renters insurance covers accidents including water damage from plumbing and weather, including damage from "windstorms, hail, and water damage from freezing of plumbing systems." *Id.* ¶¶ 43-44. Plaintiff alleges that the website is ambiguous as to what is covered but that a reasonable person would understand the website to convey that the renters insurance covers losses such as that sustained by Plaintiff and would be induced to purchase a policy thereby. *Id.* ¶¶ 46-47. Plaintiff claims that the fact that Defendant has denied coverage demonstrates the website is misleading. *Id.* ¶¶ 53-57. Plaintiff alleges "[u]pon information and belief," that Defendant's "offending practice is not an isolated incident, but a

consumer-oriented and routine practice that has affected many similarly situated insureds, and does, or has the potential to, affect the public at large." *Id*. ¶ 56.

In his fourth cause of action, Plaintiff alleges that Defendant engaged in "willful and wanton" misconduct and engaged in "improper procedure and tactics and violate[d] applicable law, rules and regulations in denying his claim and failing to investigate, adjust and pay the loss in accordance with the Policy," and as a result Plaintiff is entitled to punitive damages. *Id*. ¶ 61.

## PROCEDURAL HISTORY

Plaintiff initiated this action on July 21, 2020 by filing the Summons and Complaint in the Supreme Court of the State of New York, New York County.  On August 20, 2020, Defendant timely removed the action to this Court based upon diversity jurisdiction.  Dkt. No. 1.  On September 24, 2020, State Farm timely filed a partial motion to dismiss the claims and demand for damages that are the subject of the instant motion.  Dkt. Nos. 12-14.  In response, Plaintiff filed the Amended Complaint on November 16, 2021.  Dkt. Nos. 25-26.  Defendant filed its motion to dismiss the Amended Complaint on December 4, 2020.  Dkt. No. 28.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting

4

the claim]." *Twombly*, 550 U.S. at 556; *accord Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011). However, although the Court must accept all the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555). The ultimate issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974)); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (internal quotation marks and citation omitted).

## DISCUSSION

Defendant moves to dismiss the second through the fourth causes of action. It argues that (1) New York does not recognize a tort claim for bad faith denial of insurance coverage in first-party insurance cases; (2) the Section 349 claim fails to make any specific allegations of consumer-oriented conduct or deceptive acts; (3) there is no independent cause of action under New York law for punitive damages and the complaint does not allege conduct based upon which punitive damages could be awarded; and (4) the Policy does not entitle Plaintiff to attorney's fees if his claims are successful.

### A.     Defendant's Motion to Dismiss the Second Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing

Defendant argues that Plaintiff's second cause of action must be dismissed because New York law does not recognize an independent claim for bad faith denial of insurance coverage. Plaintiff responds that the second cause of action is addressed to Defendant's breach of the

5

convent of good faith and fair dealing and addresses different conduct from that alleged in the first cause of action. The first cause of action is addressed to Defendant's denial of insurance coverage; the second cause of action is predicated on State Farm's failure to send a claims adjuster to inspect his claimed loss and thus it is separate and apart from State Farm's wrongful claim denial claim. Dkt No. 38 at 5-6.

Defendant is correct that, except in cases where an insurance company refuses to defend or settle a claim brought by a third party against an insured, "New York law does not recognize an independent cause of action for bad faith denial of insurance coverage." *Vitrano v. State Farm Ins. Co.*, 2008 WL 2696156, at *3 (S.D.N.Y. July 7, 2008) (renters insurance policy); *see also Harriprashad v. Metropolitan Prop. & Cas. Ins. Co.*, 2011 WL 6337699 (E.D.N.Y. Nov. 17, 2011) (noting that New York does not recognize a separate claim of bad faith with respect to insurance contracts); *Core-Mark Intern. Corp. v. Commonwealth Ins. Co.*, 2005 WL 1676704, at *3 (S.D.N.Y. July 19, 2005) ("New York law does not recognize the tort of bad faith denial of insurance coverage."); *N.Y. Univ. v. Cont'l Ins. Co.*, 639 N.Y.S.2d 283, 287-90 (1995) (rejecting punitive damages in first party insurance case on grounds that no independent cause of action exists for bad faith breach of first-party insurance contract); *Harris v. Provident Life Ins.*, 310 F.3d 73, 80 (2d Cir. 2002) (distinguishing cases where the insured is the claimant from those where there is a claim against the insured). It is also true that "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris*, 310 F.3d at 81; *see also Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010), *aff'd*, 453 F. App'x 108 (2d Cir. 2012) (same); *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) ("A claim for breach of the implied covenant will be

6

dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of . . . an express provision of the underlying contract.") (internal quotation marks and citation omitted).

However, New York courts do recognize that an insurance company's handling of a claim can give rise to a breach of the duty of good faith and fair dealing. *See, e.g., Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 856 N.Y.S.2d 505 (2008); *D.K. Prop., Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 92 N.Y.S.3d 231 (1st Dep't 2019). Moreover, where the "conduct allegedly violating the implied covenant" is *not* "also the predicate for breach of . . . an express provision" of the contract, *ICD Holdings*, 976 F. Supp. at 243-44, then the two claims need not be dismissed as duplicative, *see, e.g.*, *JJM Sunrise Auto., LLC v. Volkswagen Grp. of Am., Inc.*, 997 N.Y.S.2d 270, 287 (N.Y. Sup. 2014), *adhered to on reargument*, 26 N.Y.S.3d 724 (N.Y. Sup. 2015) ("While some of the damages alleged in the claim for breach of the covenant of good faith and fair dealing may be 'intrinsically tied' to the damages resulting from the breach of contract claim, [plaintiff] alleges additional purportedly wrongful conduct during the parties' negotiation process that was not alleged as wrongful conduct constituting a breach of contract. Therefore, while [plaintiff's] ninth cause of action and its breach of contract claims involve some overlap, they consist of distinct, non-duplicative independent claims.") (quoting *Deer Park Enterprises, LLC v. Ail Systems, Inc.*, 870 N.Y.S.2d 89, 90 (2d Dep't 2008)).

Defendant does not dispute that the conduct alleged in the second cause of action would give rise to a breach of the covenant of good faith and fair dealing, but relies on *Harris v. Provident Life* for the proposition that where the identical conduct is alleged to give rise to claims for a breach of contract and a breach of the implied covenant of good faith and fair dealing they should be pleaded in a single count. 310 F.3d at 81.

7

The allegations of the second cause of action involve conduct different from that alleged in the first cause of action and are independent of the first cause of action. The first cause of action is addressed to the denial of insurance coverage. The second cause of action is addressed to the process whereby defendant reached that result—the claim that it did not send an adjuster to the Premises. Dkt. No. 26 ¶¶ 30-32. Assuming, but not deciding, that the implied covenant of good faith and fair dealing contains an obligation on the facts here for an adjuster to inspect the Premises, the second cause of action cannot be dismissed as duplicative of the first.

> B.   **Defendant's Motion to Dismiss the Third Cause of Action for Violation of Section 349**

Plaintiff's third cause of action is for violation of Section 349 of the N.Y. General Business Law. That provision makes it unlawful for any person to commit "[d]eceptive acts or practices in the conduct of any business trade or commerce or in the furnishing of any service" in New York State, N.Y. Gen Bus. Law § 349(a), and provides a private right of action to "any person who has been injured by reason of" a violation of its provisions, *id.* § 349(h).

"[S]ection 349 is directed at wrongs against the consuming public. . . . Thus, as a threshold matter, plaintiffs claiming the benefit of section 349—whether individuals or entities . . . must charge conduct of the defendant that is consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 532 (1995). In order to state a claim under Section 349, a plaintiff must allege: "(1) that the defendant's acts were consumer oriented, (2) that the acts or practices are deceptive or misleading in a material way, and (3) that the plaintiff has been injured as a result." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). A deceptive act or practice is one "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund*, 623 N.Y.S.2d at 533; *see also*

*Michelo v. Nat'l Collegiate Student Loan Trust 2007-2*, 419 F. Supp. 3d 668, 701 (S.D.N.Y. 2019) (quoting *Oswego Laborers' Local 214 Pension Fund*, 623 N.Y.S.2d at 533).

The "consumer-oriented" conduct element requires a plaintiff to show that the practices complained of have a "broad impact on consumers at large; '[p]rivate contract disputes unique to the parties . . . would not fall within the ambit of the statute.'" *N.Y. Univ.*, 639 N.Y.S.2d at 290 (quoting *Oswego Laborers' Local 214 Pension Fund*, 623 N.Y.S.2d at 532); *see also id.* ("[D]efendants' acts in selling this policy and handling the claim under it do not constitute consumer-oriented conduct."). For that reason, the numerous courts that have considered whether disputes between policy holders and insurance companies concerning the scope of coverage can amount to conduct falling within Section 349 have almost "uniformly . . . held that such disputes are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349." *DePasquale v. Allstate Ins. Co.*, 179 F. Supp. 2d 51, 62 (E.D.N.Y. 2002); *see also Minasian v. IDS Property Cas. Ins. Co.*, 2015 WL 1782040, at *1 (S.D.N.Y. Apr. 17, 2015) (same); *PB Americas Inc. v. Continental Cas. Co.*, 690 F. Supp. 2d 242, 252 (S.D.N.Y. 2010) ("[S]everal courts in this Circuit have considered whether disputes between policy holders and insurance companies concerning the scope of coverage can amount to conduct falling within § 349. Almost uniformly, those courts have held that such disputes are nothing more than private contractual disputes that lack the consumer impact necessary o state a claim pursuant to § 349.").

Plaintiff's claim is no different than those which have been held by courts in this Circuit to be insufficient to state a claim under Section 349. Plaintiff alleges that Defendant maintains a publicly accessible website describing its renters insurance and then states in conclusory terms that the language it conveys regarding the coverage of the policy with respect to damage from

9

"windstorms, hail, and water damage from plumbing" would lead a reasonable person to understand that the policy would cover losses such as that sustained by Plaintiff.  Dkt. No. 26 ¶¶ 43-44.  However, Plaintiff does not allege what precisely the loss he suffered is and what language on the website would lead a reasonable consumer to believe that the insurer would automatically agree to extend coverage to an insured upon notice of claim without determining for itself whether the loss was covered or not.  *See Perfect Dental, PLLC v. Allstate Ins. Co.*, 2006 WL 2552171, at *3 (E.D.N.Y. Aug. 31 2006) (dismissing Section 349 claim in insurance context where "plaintiffs failed to allege either sufficient or specific facts concerning any alleged policy or practice by defendants that violated § 349 in their complaint").  Nor has Plaintiff alleged that there is anything universal or general about its dispute with Defendant.  It merely makes the conclusory and insufficient "information and belief" allegation that Defendant's "offending practice is not an isolated incident, but a consumer-oriented and routine practice that has affected many similarly situated insureds, and does, or has the potential to, affect the public at large."  Dkt. No. 26 ¶ 56.  The same generalized statement, lacking any factual support, could be made in any insurance dispute.  Plaintiffs' allegations set forth a contractual disagreement as to whether coverage for the noticed loss is required.  There is nothing broadly consumer-oriented about such a dispute—apart from the immaterial fact that insurance companies and insureds may frequently engage in coverage disputes.  That fact alone, however, does not transform a purely private issue into a consumer-oriented one. Nor does Plaintiff's wholly conclusory assertion that Defendant's conduct exhibited a "consumer-oriented and routine practice" so transform it.  *Id*.; *see also Minasian*, 2015 WL 1782040, at *1 ("Conclusory statements that conduct is consumer-oriented are insufficient.").

Plaintiff's allegations are easily distinguishable from those held sufficient to state a claim in *Gaidon v. Guardian Life Ins. Co of AM.*, 704 N.Y.S.2d 177 (1999), *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208 (2d Dep't 2010), and *Skibinsky v. State Farm Fire & Cas. Co.*, 775 N.Y.S.2d 200 (3d Dep't 2004). In *Gaidon*, the conduct at issue was "an extensive marketing campaign that had a 'broader impact on consumers at large.'" 704 N.Y.S.2d at 182 (quoting *Oswego Laborers' Local 214 Pension Fund*, 623 N.Y.S.2d at 532). In *Wilner*, the plaintiff challenged a subrogation provision in every Allstate Deluxe Plus Homeowners' Policy that required the insured to protect the insurer's subrogation interest and to incur defense costs in that respect while the insured's claim was being investigated and before the insurer ever made a commitment to cover the loss. 893 N.Y.S.2d at 211-12. While recognizing that "the statute does not apply to private contract disputes unique to the parties," *id*. at 215, the court held that because the provision applied to "any consumer holding this policy, whose loss is potentially attributable to a third party," "the conduct complained of has a 'broad impact on consumers at large' and is thus consumer-oriented." *Id*. at 216 (quoting *N.Y. Univ.*, 639 N.Y.S.2d at 290). In *Skibinsky*, Plaintiff alleged that the defendant insurance broker and defendant insurer together "engaged in a 'recurring pattern' of selling homeowner's policies too consumers seeking more inclusive 'builder's risk' policies" and engaged in "deceptive conduct . . . involving the sale of lesser policies than those requested by members of the public while at the same time representing that the desired coverage has been provided." 775 N.Y.S.2d at 201-02.

In this case, by contrast, there is no dispute that Plaintiff received what he paid for—a policy that covered loss from windstorms, hail, and water damage from plumbing. The dispute is over the insurer's application of the policy language to the idiosyncratic facts of Plaintiff's loss. Plaintiff's allegations therefore do not state a claim under Section 349.

11

### C. Defendant's Motion to Dismiss the Fourth Cause of Action for Punitive Damages

Plaintiff's fourth cause of action alleges that Defendant engaged in wanton and willful misconduct sufficient to give rise to punitive damages. However, New York does not provide an independent cause of action for punitive damages. *See Light v. W2001 Metro. Hotel Realty LLC*, 2011 WL 2175778, at *3 (S.D.N.Y. June 2, 2011) ("New York does not recognize an independent cause of action for punitive damages."); *Nwachukwu v. Chemical Bank*, 1997 WL 441941, at *8 (S.D.N.Y. Aug. 6, 1997) ("[T]here exists no independent cause of action for punitive damages . . . . To the extent that plaintiff's sixth claim for relief is intended as an independent claim for punitive damages . . . I dismiss that claim with prejudice."); *Tartaro v. Allstate Indem. Co.*, 868 N.Y.S.2d 281, 282 (2d Dep't 2008) ("New York [law] does not recognize an independent cause of action for punitive damages.").

Plaintiff does not defend the fourth cause of action or assert authority to the contrary. The claim thus may also be deemed to be abandoned. *See Thurmand v. Univ. of Connecticut*, 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019).

### D. Defendant's Motion to Strike the Prayer for Punitive Damages

Plaintiff seeks an award of punitive damages in connection with his second, third and fourth causes of action. Compl. ¶¶ 38, 57, 63, prayer for relief B-D.

"[T]he standard for awarding punitive damages in first-party insurance actions is 'a strict one.'" *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 612 N.Y.S.2d 339, 343 (1994) (quoting *Cohen v. New York Prop. Ins. Underwriting Assn.*, 410 N.Y.S.2d 597, 602 (1st Dep't 1978)). Under New York law, damages arising from the breach of a contract are "ordinarily limited to the contract damages necessary to redress the private wrong," but "punitive damages may be recoverable if necessary to vindicate a public right." *N.Y. Univ.*, 639 N.Y.S.2d at 287 (citing

12

*Rocanova*, 612 N.Y.S.2d at 342).  Punitive damages are available only where they are "necessary to deter defendant and others like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible,' and of 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'"  *Id*. (quoting *Rocanova*, 612 N.Y.S.2d at 342).  The elements required to state a claim for punitive damages are: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature . . . ; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public."  *Matter of Part 60 Put-Back Litig.*, 141 N.Y.S.3d 410, 422 (2020) (quoting *N.Y. Univ*, 612 N.Y.S.2d at 287).  The Defendant must plead "that he was personally the victim of a cognizable tort arising out of his contractual relationship with [the insurer], and . . . demonstrate that the wrong to him not only rose to the level of 'such wanton dishonesty as to imply a criminal indifference to civil obligations', but [that it] was also part of a pattern of similar, publicly directed misconduct."  *Rocanova*, 612 N.Y.S.2d at 342 (quoting *Walker v. Sheldon*, 223 N.Y.S.3d 488, 491 (1961)); *see also Tartaro v. Allstate Indem. Co.*, 868 N.Y.S.2d 281, 282 (2d Dep't 2008) (same).

In *New York University v. Continental Ins. Co.*, for example, the New York Court of Appeals held that allegations that the defendant acted recklessly and vindictively and violated the laws of New York "in failing to adequately investigate [plaintiff's claim], in denying payment of the claim, and in failing to renew the policy after assertion of the claim" did not support a claim for punitive damages.  639 N.Y.S.2d at 289-90.  The allegations "amount[ed] to nothing more than a claim based on the alleged breach of the implied covenant of good faith and fair dealing."  *Id*. at 290.

13

Plaintiff argues that he should be permitted to pursue his claim for punitive damages on the second cause of action because he pleads that Defendant's conduct was "willful and wanton," and "constitute[d] improper procedure and tactics and violate[d] applicable law, rules and regulations." Dkt. No. 38 at 19. But those are just conclusions not supported by any facts. Plaintiff has pleaded no more than that his claim was improperly denied after insufficient investigation, which is not enough. *See Woodhams*, 748 F. Supp. 2d at 223 ("New York Law . . . does not recognize . . . 'an independent cause of action for bad faith denial of insurance coverage.'") (quoting *Vitrano*, 2008 WL 2696156, at *3). He does not allege an independent tort, much less one of an egregious nature, or a pattern directed at the public. His prayer for punitive damages as part of his second cause of action must be dismissed.

In addition, for the reasons stated in the previous sections, Plaintiff's third and fourth causes of action fail to state a claim for any relief. It follows that the prayer for punitive damages as part of those causes of action also must fail.

### E. Defendant's Motion to Strike Plaintiff's Prayer for Attorney's Fees

Plaintiff seeks an award of attorney's fees as part of his prayer for relief on his first cause of action (breach of contract), second cause of action (covenant of good faith and fair dealing), and third cause of action (Section 349). *See* Compl. ¶¶ 27, 38, 57.

Plaintiff's demand for attorney's fees in connection with his first and second causes of action must be dismissed. The rule in New York is that, as a general matter, an "insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." *N.Y. Univ.*, 639 N.Y.S.2d at 283; *U.S. Underwriters Ins. Co., v. City Club Hotel*, 789 N.Y.S.2d 470, 472 (2004) ("[A] prevailing party may not recover attorneys' fees from the losing party except where authorized by statute, agreement or court rule."); *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 416 N.Y.S.2d 559, 564 (1979) ("[I]t has now long been the

14

universal rule in this country not to allow a litigant to recover damages for the amounts expended in the successful prosecution or defense of its rights."); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 177 (2d Cir. 2006).  The rule contrasts with that of "other legal systems, such as that in Great Britain" and "reflects a fundamental legislative policy decision that, save for particular exceptions or when the parties have entered into a special agreement, it is undesirable to discourage submission of grievances to judicial determination and that, in providing freer and more equal access to the courts, the present system promotes democratic and libertarian principles." *Continental Ins. Co.*, 416 N.Y.S.2d 559 at 564 (citations omitted).

The general rule that attorney's fees are not available when an insured brings an affirmative action against his insurer admits of only very limited exceptions.  New York's Court of Appeals "has suggested that an exception to the general rule prohibiting claims for attorneys' fees may exist when the insured can make 'a showing of such bad faith [on the part of the insurer] in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it.'" *Natl. R.R. Passenger Corp. v Arch Specialty Ins. Co.*, 124 F Supp. 3d 264, 280 (S.D.N.Y. 2015) (quoting *Sukup v. State*, 281 N.Y.S.2d 28, 31 (1967)); *see also Liberty Surplus Ins. Corp. v. Segal Co.*, 2004 WL 2102090, at *4 (S.D.N.Y. Sept. 21, 2004).[1]  There also is limited authority that "in unusual circumstances" an insured who initiates a declaratory judgment action may nonetheless be entitled to recover fees under the insurer's duty to defend where the

---

[1] The seminal case for the proposition that attorney's fees may be available upon such a showing, *Sukup v. State*, is a third-party insurance case and distinguishable on that ground alone insofar as its suggestion of the possibility of extra-contractual damages is grounded in the notion of an independent tort for denial of coverage.  *See Harris*, 310 F.3d at 80; *See Scottsdale Ins. Co. v. McGrath*, No. 19-cv-7477, Opinion and Order at Dkt. No. 72, at 11-12, 11 n.2 (S.D.N.Y. July 19, 2021) (discussing the distinction between first-party and third-party insurance cases with regard to the availability of an independent claim for bad faith denial of coverage and refusal to settle).

15

"insured has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations." *Houston Cas. Co. v. Prosight Specialty Ins. Co.*, 462 F. Supp. 3d 443, 451 (S.D.N.Y. 2020) (quoting *Hervochon v. Iona Coll.*, 2019 WL 2451431, at *4-5 (S.D.N.Y. Feb. 15, 2019), *report and recommendation adopted*, 2019 WL 1375359 (S.D.N.Y. Mar. 27, 2019)).[2]

Plaintiff has alleged no more than "an arguable difference of opinion between carried and insured over coverage," which, under New York law, is insufficient to support "extracontractual liability for legal expenses." *Liberty Surplus Ins. Corp. v. Segal Co.*, 2004 WL 2102090, at *5 (quoting *Sukup*, 281 N.Y.S.2d at 31). He asserts that "there is coverage under the policy issued by the defendant for the claim and loss" and that in not paying for the loss or adjusting the claim in good faith or in a timely manner, Defendant acted "in gross disregard of [the] interests of its insured." Dkt. No. 38 at 15-16. But he does not allege any facts that would demonstrate that Defendant acted in gross disregard of his rights; he alleges neither facts known to Defendant that would clearly establish coverage, nor the specific policy language that would establish coverage.

---

[2] The New York courts have held that the background principle that an insured may not recover fees incurred when it brings an action against an insurer for breach of contract has not been altered by the opinions of the New York Court of Appeals in *Bi-Economy Marlet Inc. v Harleysville Ins. Co. of New York*, 856 N.Y.S.2d at 505 (2008) and *Panasia Estates, Inc. v. Hudson Insurance Co.*, 856 N.Y.S.2d 513 (2008). *See, e.g.*, *Natl. R.R. Passenger Corp.*, 124 F Supp. 3d at 280; *Young Men's Christian Ass'n of Plattsburgh*, 2018 WL 6267923, at *8 ("Neither the New York Court of Appeals' holdings in *Panasia* or *Bi-Economy* suggest that it intended to alter in the insurance context the traditional American rule that each party should bear its own attoneys' fees."); *Shapiro v. Liberty Special Markets*, 2018 WL 10582979, at *2 (S.D.N.Y. July 24, 2018) ("*Bi-Economy* does not mention attorneys' fees, and since *Bi-Economy* was decided, New York and federal courts have squarely rejected the argument that attorneys' fees are recoverable as consequential damages for breach of the implied covenant."); *Stein, LLC v. Lawyers Title Ins. Corp.*, 953 N.Y.S.2d 303, 622-23 (2d Dep't 2012) ("[N]othing in *Bi-Economy* or *Panasia* alters the common-law rule that, absent a contractual or policy provision permitting the recovery of an attorney's fee, 'an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy.'") (quoting *N.Y. Univ.*, 639 N.Y.S.2d at 292).

His conclusory assertions do not amount to "a showing of such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it." *Sukup*, 19 N.Y.2d at 522. "[A]ll this amounts to is [a] legal controversy between the carrier and insured for which no liability for the legal fees of one party would be chargeable to the other in the absence of some extraordinary showing." *Id*. at 30.

Plaintiff's further request for attorney's fees in connection with his Section 349 claim—which does permit an award of reasonable fees to an injured party—must be dismissed because his allegations do not state a claim for relief under that provision.

## CONCLUSION

For the foregoing reasons, Plaintiff's partial motion to dismiss, at Dkt. No. 28, is GRANTED.

SO ORDERED.

Dated: July 20, 2021
New York, New York

LEWIS J. LIMAN
United States District Judge